# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 6:18-CV-01229-MJJ-CBW |
| Plaintiff, | DISTRICT JUDGE MICHAEL J. JUNEAU |
| vs. |  |
| WORLD TREE FINANCIAL, LLC, WESLEY KYLE PERKINS, and PRISCILLA GILMORE PERKINS, | MAGISTRATE JUDGE CAROL B. WHITEHURST |
| Defendants. |  |

# SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR <u>PARTIAL SUMMARY JUDGMENT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     SUMMARY OF UNDISPUTED FACTS ................................................... 1

    A.   Defendants ........................................................................................... 1

    B.   World Tree's Formation and Operation ............................................... 2

    C.   Securities Trading at World Tree ......................................................... 3

    D.   The Material False Statements in World Tree's Forms ADV ............. 3

    E.   World Tree and Perkins Were Investment Advisers ............................ 6

III.    ARGUMENT ............................................................................................. 6

    A.   The SEC is Entitled to Partial Summary Judgment ............................ 6

    B.   Defendants Violated the Antifraud Provisions of the Securities
        Laws ..................................................................................................... 8

        1.   Defendants made material misrepresentations ......................... 8

        2.   Defendants were the "makers" of the false statements ........... 11

        3.   Defendants acted with scienter ............................................... 12

        4.   Defendants' Misstatements Were In Connection With the
            Purchase or Sale of Securities ................................................. 14

    C.   Defendants Violated Section 206(1) and 206(2) of the Advisers
        Act ..................................................................................................... 15

        1.   World Tree and Perkins Violated the Advisers Act .............. 15

            a.   World Tree and Perkins Are Fiduciaries ...................... 15

            b.   Perkins and World Tree Breached Their Duties and
                Violated the Advisers Act .............................................. 17

            c.   Perkins and World Tree Acted with Scienter ............... 17

        2.   Gilmore Aided and Abetted World Tree and Perkins
            Violations ................................................................................. 18

    D.   The Court Should Issue Permanent Injunctions ................................ 18

    E.   The SEC Reserves Its Request For Monetary Relief ........................ 19

    F.   There Are No Genuine Issues of Material Fact on Certain Elements
        of the SEC's Claims .......................................................................... 20

IV.    CONCLUSION............................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Aaron v. SEC,*
    446 U.S. 680 (1980)............................................................................8

*Abbot v. Equity Group, Inc.,*
    2 F.3d 613 (5th Cir. 1993) ...............................................................18

*Abrahamson v. Fleschner,*
    568 F.2d 862 (2nd Cir. 1977) ................................................... 16, 21

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)............................................................................7

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988)............................................................................9

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986).........................................................................6, 7

*Ernst & Ernst v. Hochfelder,*
    425 U.S. 185 (1976)..........................................................................12

*Howard v. Everex Sys., Inc.,*
    228 F.3d 1057 (9th Cir. 2000) .........................................................13

*In re ChinaCast Educ. Corp. Sec. Litig.*
    809 F.3d 471 (9th Cir. 2015) ...........................................................14

*Janus Capital Group, Inc. v. First Derivative Traders,*
    564 U.S. 135 (2011)................................................................... 11, 12

*SEC v. Altomare,*
    300 Fed. Appx. 70 (2d Cir. 2008) ...................................................13

*SEC v. Apuzzo,*
    689 F.3d 204 (2d Cir. 2012) ............................................................18

*SEC v. Battoo,*
    158 F. Supp. 3d 676 (N.D. Ill. 2016)...............................................21

*SEC v. Benger,*
    931 F. Supp. 2d 904 (N.D. Ill. 2013)...............................................12

*SEC v. Big Apple Consulting, USA, Inc.,*
    783 F.3d 786 (11th Cir. 2015)..........................................................12

*SEC v. Burns,*
    816 F.2d 471 (9th Cir. 1987) ...........................................................13

*SEC v. Capital Gains Research Bureau, Inc.,*
    375 U.S. 180 (1963)..........................................................................16

*SEC v. Constantin*,
    939 F. Supp. 2d 288 (S.D.N.Y. 2013) ....................................................13

*SEC v. Credit Bancorp, Ltd.*,
    195 F. Supp. 2d 475 (S.D.N.Y. 2002) ....................................................10

*SEC v. DiBella*,
    No. 3:04-cv-1342 (EBB), 2007 WL 2904211 (D. Conn. Oct. 3, 2007)........16

*SEC v. Fehn*,
    97 F.3d 1276 (9th Cir. 1996) ................................................................. 18, 19

*SEC v. First Pacific Bancorp*,
    142 F.3d 1186 (9th Cir. 1998) ....................................................................19

*SEC v. Jakubowski*,
    150 F.3d 675 (7th Cir. 1998) ......................................................................13

*SEC v. Janus Spectrum LLC*,
    *Nos.* 17-17042, 18-15403, 2020 U.S. App. LEXIS 20710
    (9th Cir. July 1, 2020)................................................................................19

*SEC v. K.W. Brown*,
    555 F. Supp. 2d 1275 (S.D. Fla. 2007)........................................................14

*SEC v. Koracorp Indus., Inc.*,
    575 F.2d 692 (9th Cir. 1978) ......................................................................18

*SEC v. Lauer*,
    No. 03-80612, 2008 WL 4372896 (S.D. Fla. Sep. 24, 2008).......................15

*SEC v. Liu*,
    No. SACV 16-00974-CJC(AGRx), 2016 U.S. Dist. LEXIS 91078
    (C.D. Cal. July 11, 2016)........................................................................ 12, 19

*SEC v. Manor Nursing Ctrs.*
    458 F.2d 1082 (2d Cir. 1979) ......................................................................14

*SEC v. Monterosso*,
    756 F.3d 1326 (11th Cir. 2014) ..................................................................12

*SEC v. Palmisano*,
    135 F.3d 860 (2d Cir. 1998) ......................................................................20

*SEC v. Rana Research, Inc.*,
    8 F.3d 1358 (9th Cir. 1993) ..........................................................................9

*SEC v. Research Automation Corp.*,
    585 F.2d 31 (2d Cir. 1978).........................................................................10

*SEC v. Rind*,
    991 F.2d 1486 (9th Cir. 1993) ....................................................................19

*SEC v. Rogers*
    790 F.2d 1450 (9th Cir.1986) ......................................................................8

*SEC v. Universal Exp., Inc.*,
   475 F. Supp. 2d 412 (S.D.N.Y. 2007) ........................................13

*SEC. v. Familant*,
   910 F. Supp. 2d 83 (D.D.C. 2012)..............................................12

*Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*,
   395 F.3d 533 (5th Cir. 2004) ......................................................7

*Steadman v. SEC*,
   603 F.2d 1126 (5th Cir. 1979) ..................................................17

*Superintendent of Ins. v. Bankers Life & Cas. Co.*,
   404 U.S. 6 (1971)......................................................................14

*Transamerica Mortgage Adviser, Inc. v. Lewis*,
   444 U.S. 11 (1979)....................................................................15

*TSC Indus. v. Northway*,
   426 U.S. 438 (1976)....................................................................9

*U.S. v. Elliott*,
   62 F.3d 1304 (11th Cir. 1996) ..................................................16

**Investment Advisers Act of 1940**

Section 202(a)(11)
   [15 U.S.C. §80b-2(a)(11)] .........................................................16

Section 206(2)
   [15 U.S.C. 80b-6(2) .............................................................. 15, 17

**Securities Act of 1933**

Section 17(a)
   [15 U.S.C. § 77q(a)] ...................................................................8

Section 17(a)(1)
   [15 U.S.C. § 77q(a)(1)]...............................................................8

Section 17(a)(2)
   [15 U.S.C. § 77q(a)(2)].......................................................... 8, 12

Section 20(b)
   [15 U.S.C. § 77t(b)] .................................................................18

**Securities Exchange Act of 1934**

Section 10(b)
   [15 U.S.C. § 78j(b)] ................................................................8, 9

Section 21(d)
      [15 U.S.C. § 78u(d)] ...........................................................................18


**Exchange Act Rules**

Rule 10b-5
      [17 C.F.R. § 240.10b-5]................................................................ 8, 15

Rule 10b-5(b)
      [17 C.F.R. § 240.10b-5(b)] ...................................................... 9, 11, 12

Rule 10b-5(c)
      [17 C.F.R. § 240.10b-5(c)] ...........................................................12


**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56(a)....................................................................................6


**Other Authorities**

Investment Advisers Act Release No. 1092 (October 8, 1987)..............................16

## I.      INTRODUCTION

For over five years, Defendants Wesley Perkins, Priscilla Gilmore Perkins, and World Tree Financial (collectively "Defendants") made false and materially misleading statements to their advisory clients by trading in the same securities as their clients while representing that they would not do so.   Specifically, Defendants told their clients in their Form ADV Disclosure Brochures, filed with the Securities and Exchange Commission ("SEC"), that they would not trade in the same securities as their clients, when in fact they were regularly engaging in simultaneous securities trades with them in an omnibus trading account.   When the custodian of their client accounts called this discrepancy to their attention in July 2015, Defendants did not stop the offensive conduct; they merely "clarified" their client disclosures and continued trading with their clients.

With this motion, Plaintiff SEC seeks partial summary judgment on its second, fourth, fifth and sixth claims for relief against Defendants for making misrepresentations to their advisory clients.

Because there can be no genuine issue as to any material fact underlying the SEC's claims that the Defendants made materially false statements to their clients, the SEC is entitled to judgment as a matter of law on its second, fourth, fifth, and sixth claims for violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, Section 17(a)(2) of the Securities Act, and Sections 206(1) and 206(2) of the Advisers Act related to these false statements.

## II.     SUMMARY OF UNDISPUTED FACTS

### A.      Defendants

Defendant World Tree Financial, LLC is a Louisiana corporation with its principal place of business in Lafayette, Louisiana.   Statement of Facts As to Which There is No Material Issue ("SOF") No. 1.   World Tree was an SEC-registered investment adviser until June 15, 2012, when it withdrew its SEC registration.   SOF No. 2.   World Tree was registered as an investment adviser

with the State of Louisiana at the time this lawsuit was filed.   SOF No. 3.   As of March 2018, World Tree had assets under management of over $54 million and 161 advisory clients.   SOF No. 4.

Defendant Wesley Kyle Perkins ("Perkins") is a resident of Lafayette, Louisiana.   SOF No. 5.   Perkins co-founded World Tree in 2009, and has been the firm's 60% owner, chief executive officer, and chief investment officer since World Tree's inception.   SOF No. 6.   Perkins holds Series 6, 7, and 66 securities licenses.   SOF No. 7.   Perkins married co-defendant Priscilla Gilmore Perkins ("Gilmore") in 2017.   SOF No. 8.

Defendant Gilmore is a resident of Lafayette, Louisiana.   SOF No. 9. Since co-founding World Tree with Perkins in 2009, Gilmore has been the firm's 40% owner, chief financial officer, chief compliance officer, and chief operating officer.   SOF No. 10.   Gilmore holds Series 6, 7 and 66 securities licenses.   SOF No. 11.

### B.    World Tree's Formation and Operation

In 2009, Perkins and Gilmore left a firm where they had both worked as financial advisers, and co-founded World Tree.   SOF No. 12.   More than 75 percent of World Tree's advisory clients are individual investors.   SOF No. 13. For its investment advice, World Tree charges clients an advisory fee that ranges between 0.5% to 1.5% of the client's assets under management.   SOF No. 14. From March 2011 through September 2015, the assets under management at World Tree varied, and at times were between approximately $40 million and $70 million.   SOF No. 15.

World Tree and Perkins purportedly assigned each of their clients to one of five stock "investment models," but in reality, they utilized the same basic stock trading strategy across the majority of their client accounts.   SOF No. 16.   World Tree clients held different amounts of stocks in their respective accounts at any one time, depending on the respective size of their account.    SOF No. 17.

At all relevant times, Perkins and Gilmore jointly controlled World Tree. SOF No. 18.   As World Tree's chief investment officer, Perkins was solely responsible for managing all the securities trading, including allocating trades placed through the firm's omnibus account to clients.   SOF No. 19.   As World Tree's chief compliance officer, chief financial officer and chief operating officer, Gilmore ran World Tree's office operations and supervised all aspects of the firm's compliance program.   SOF No. 20.

### C.    Securities Trading at World Tree

World Tree manages most of its clients' assets on a discretionary basis, meaning it has authorization to trade securities on behalf of most of its clients. SOF No. 21.

From December 2009 to October 2015, World Tree traded through the brokerage platform of a registered broker-dealer ("Broker").   SOF No. 22.   The Broker also acted as the custodian for World Tree's client accounts, meaning that a third-party held the securities on the clients' behalf.    SOF No. 23.

Defendants generally traded for both themselves and the clients through an omnibus trading account held at the Broker where trades were made as a block and then later allocated by Defendants to themselves and/or the individual clients' accounts.   SOF No. 24.   The trades and the allocations were transmitted to the Broker by Perkins, who created a spreadsheet with the allocations and uploaded it to the Broker's website.   SOF No. 25.   The majority of the trade allocations that Perkins transmitted to the Broker from the omnibus account were sent after the market closed and unrealized gains and losses were known.   SOF No. 26. Perkins made the majority of the trades at World Trade and determined how the trades were allocated.   SOF No. 27.

### D.    The Material False Statements in World Tree's Forms ADV

A Form ADV is a document required to be filed with the SEC by investment advisers registered with the SEC.   SOF No. 28.   The filing consists of

two parts—Part 1 contains "check-the-box" information about the firm, and Part 2 is a brochure, in narrative form, which describes key information about the firm, including the types of services the firm provides.   SOF No. 29.   An investment adviser's Form ADV must be updated at least annually.   SOF No. 30.

While it was registered with the SEC, World Tree, through Perkins or Gilmore, delivered its Form ADV, Part 2A brochure to clients at the time it entered into an advisory contract with them, and made it available to clients annually. SOF No. 31.   World Tree's Forms ADV, Part 2A were also available online through the SEC's website.   SOF No. 32.

After World Tree became a Louisiana state-registered investment adviser in June 2012, it filed its Forms ADV annually with the Investment Adviser Registration Depository; those filings were also publicly available on the internet. SOF No. 33.

World Tree's Form ADV brochure was made available to its advisory clients at regular intervals as required by law.   SOF No. 34.   Before providing them to World Tree's clients and filing them with the SEC, Gilmore and Perkins both reviewed drafts of the Forms ADV, and authorized the final version for filing and distribution to World Tree's clients.   SOF No. 35.   Either Perkins or Gilmore signed every World Tree Form ADV from 2011 to 2015.   SOF No. 36.   Perkins and Gilmore had ultimate control and authority over the contents of the Forms ADV.   SOF No. 37.

Item 11 of World Tree's Forms ADV, part 2a filed on March 15, 2011, February 7, 2012, June 5, 2012, March 25, 2013, March 18, 2014, and February 9, 2015 stated that:

> (i) "none of World Tree's Access Persons [Perkins and Gilmore] may effect for themselves or for their immediate family (i.e., spouse, minor children, and adults living in the same household as the Access Person) any transactions in a security which is being actively purchased or sold, or is being considered for the purchase or sale, on behalf of World Tree's clients"; and

4

>(ii) "no Access Person may purchase or sell … any Securities … if
>the Access Person knows or reasonably should know that the
>Security, at the time of purchase or sale (i) is becoming considered
>for purchase or sale on behalf of any client Account, or (ii) is being
>actively purchased or sold on behalf of any Client Account."

SOF No. 38.

On 692 occasions between July 1, 2012 through July 14, 2015, Perkins
allocated trades from World Tree's omnibus account to accounts under Perkins'
and Gilmore's ownership and/or control while simultaneously allocating trades in
those same securities for World Tree clients.   SOF No. 39.

Perkins and Gilmore each signed acknowledgments that they had read and
understood the World Tree compliance manual.   SOF No. 40.   The compliance
manual explicitly described the prohibition against trading in securities also under
consideration for investment by clients.   SOF No. 41.

In August 2015, World Tree amended part 2A of its Form ADV after its
broker noticed that Perkins and Gilmore were trading the same securities as their
clients in their personal accounts.   Rather than stop such trading, they amended
the Form ADV to disclose they could trade in the same securities as World Tree's
clients using the omnibus account.   SOF No. 42.

Both Perkins and Gilmore testified that they were aware of the prohibition in
the World Tree compliance manual and Forms ADV against trading the same
securities that World Tree and Perkins were trading for clients.   SOF No. 43.
Perkins and Gilmore both testified that, in retrospect, the block trading they did
with their clients violated the prohibition against such trades.   SOF No. 44.

Gilmore was aware of the improper trading on her and her husband's behalf
because she verified the allocations on the next trading day as part of her daily
responsibilities.   SOF No. 45.

The largest client at the firm did not know that Defendants were trading in
the same securities he was.   SOF No. 46.   That same client testified that he was

aware that Defendants owed him a fiduciary duty and that he expected they would always trade in his best interest.   SOF No. 47.   World Tree's largest client further testified that the false and misleading misstatements concerning the prohibited transactions were important to him because he viewed an investment adviser's compliance with the provisions in its disclosure documents to be a key factor in his selection of an investment adviser.   SOF No. 48.

### E.   World Tree and Perkins Were Investment Advisers

During all relevant times, World Tree and Perkins acted as investment advisers.   SOF No. 49.   World Tree provided investment advice to clients in exchange for a fee calculated as a percentage of assets under management.   SOF No. 50.   World Tree was an SEC-registered investment adviser through June 2012, and was a Louisiana state-registered investment adviser at the time this action was commenced.   SOF No. 51.   Perkins made the investment decisions for the securities trading in World Tree accounts.   SOF No. 52.

Perkins was compensated for acting as an investment adviser and managing World Tree client accounts and directly benefitted from the advisory fees World Tree earned in the form of salary, bonuses, and benefits.   SOF No. 53.

## III.   <u>ARGUMENT</u>

### A.   The SEC is Entitled to Partial Summary Judgment

A party is entitled to summary judgment "upon all or any part of [a] claim" when the movant shows there is no genuine dispute as to any material fact regarding that claim.   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   Once the movant has made such a showing, "the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment."   *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence.").   Instead, they must submit significant probative *evidence* to show that material, triable issues of fact remain. *See Anderson v. Libby Lobby, Inc.*, 477 U.S.

242, 249-50 (1986).   The opposing party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted).   "The mere scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252.

Furthermore, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.   Factual disputes that are irrelevant or unnecessary will not be counted."   *Anderson*, 477 U.S. at 252, 248.   "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, [the district] court may render summary judgment."   *Shaw Constructors v. ICF Kaiser Eng'rs, Inc*., 395 F.3d 533, 539 (5th Cir. 2004).[1]

There are no genuine issues of material fact as to each element of several of the SEC's claims, namely its claims that (1) all Defendants violated Section 10(b) and Rule 10b-5(b) of the Exchange Act (Second Claim); (2) all Defendants violated Section 17(a)(2) of the Securities Act (Fourth Claim); (3) Perkins and World Tree violated Sections 206(1) and 206(2) of the Advisers Act (Fifth Claim); and (4) Gilmore aided and abetted Perkins and World Trade's violations of Sections 206(1) and 206(2) of the Advisers Act (Sixth Claim).   As to each of these claims, a trial is not necessary and summary judgment in the SEC's favor is appropriate.

---

[1] Courts routinely grant summary judgment in the SEC's favor in enforcement actions where, as here, the record presents no genuine issue for trial. This is so even when the SEC's claims require proof of scienter. *See, e.g., SEC v. Recile*, 10 F.3d 1093, 1098 (5th Cir. 1993) (affirming summary judgment in SEC's favor on scienter-based fraud claims); *SEC v. United Energy Partners, Inc*., 88 Fed. App'x 744 (5th Cir. Feb. 18, 2004) (same); *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1093 (9th Cir. 2010) (same); *SEC v. Ficken*, 546 F.3d 45, 54 (1st Cir. 2008) (same).

**B.      Defendants Violated the Antifraud Provisions of the Securities Laws**

In its Second and Fourth Claims, the SEC has alleged that all Defendants violated Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder by distributing Forms ADV to their clients that falsely represented that Defendants would not trade in the same securities as their clients.   Section 17(a) of the Securities Act prohibits fraud in the offer or sale of securities, and Section 10(b) of the Exchange Act prohibits fraud in connection with the purchase or sale of any security.   Because there are no triable issues of fact with respect to these claims, the Court should grant summary judgment for the SEC on them.

**1.      Defendants made material misrepresentations**

To establish a prima facie case under Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5, the SEC must prove by a preponderance of the evidence: (1) a material misrepresentation, omission of material fact, or other fraudulent device; (2) in connection with the purchase, offer, or sale of a security; (3) with the requisite mental state.   15 U.S.C. § 77q(a)(2); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; *Aaron v. SEC,* 446 U.S. 680, 695 (1980); *SEC v. Gann,* 656 F. 3d 932, 936 (5th Cir. 2009); *SEC v. Seghers,* 298 F. App'x 319, 328 (5th Cir. 2008).   Violations of Section 10(b) and Rule 10b-5 require a showing of scienter.   *Aaron*, 446 U.S. at 697.   Violations of Section 17(a)(2) require, at most, a showing of negligence.   *Id.;SEC v. Hopper,* 2006 U.S. Dist. LEXIS 17772 at *30 (S.D. Tex. Mar. 24 2006).

To establish a violation of Section 17(a)(2), the SEC must prove, in connection with the offer or sale of a security: (1) a material false statement or omission; (2) made with at least negligence; (3) the receipt of money or property

by means thereof; (4) by means of interstate commerce.[2]  *See, e.g.*, *SEC v. Glt Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).   To establish a violation of Section 10(b) and Rule 10b-5(b), the SEC must show that a defendant, (1) in connection with the purchase or sale of a security: (2) made an untrue statement or omitted to state a material fact, (3) with scienter; (4) by means of interstate commerce.   *See* 17 C.F.R. § 240.10b-5(b).   *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010); *see also SEC v. Rana Research*, *Inc*., 8 F.3d 1358, 1364 (9th Cir. 1993).

To be actionable, misstatements and omissions must concern material facts. *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).   "[T]he standard for misrepresentation is whether the information disclosed, understood as a whole, would mislead a reasonable potential investor.   [And a] statement or omitted fact is material if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest."   *SEC v. Seghers,* 298 F. App'x 319, 328 (5th Cir. 2008); *see also TSC Indus. v. Northway*, 426 U.S. 438, 449 (1976); *S.E.C. v. Gann,* 565 F.3d 932, 937 n.17 (5th Cir. 2009).

Liability arises not only from affirmative representations but also from failures to disclose material information.   "An omitted fact is material 'if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1092 (9th Cir. 2010); *Basic v. Levinson,* 485 U.S. 224, 231-32 (1988). "Summary judgment on matters of materiality in a securities fraud case is appropriate when the omission and misrepresentations in questions are 'so

---

2 The interstate commerce element is easily met here, because Defendants used emails and telephones to communicate with their clients and the broker, and the securities trades at issue were made on a national securities exchange.   15 U.S.C. § 78j(b); *United States v. Hornaday*, 392 F.3d 1306, 1311, 1316 (11th Cir. 2004) (The internet is an instrumentality of interstate commerce, as is the telephone).

obviously important to the investor that reasonable minds cannot differ on the question of materiality."   *SEC v. Credit Bancorp, Ltd*., 195 F. Supp. 2d 475, 292 (S.D.N.Y. 2002) quoting *SEC v. Research Automation Corp*., 585 F.2d 31, 35 (2d Cir. 1978)).

The uncontroverted evidence here shows that year over year from 2011 to 2015, Defendants Form ADV Part 2A informed clients that they would not engage in any transactions on their own behalf "in a security which is being actively purchased or sold, or is being considered for the purchase or sale, on behalf of World Tree's clients."   SOF No. 38.   But on 692 occasions between July 1, 2012 through July 14, 2015, Perkins allocated trades from World Tree's omnibus account to accounts under Perkins' and Gilmore's ownership and/or control while simultaneously allocating trades in those same securities for World Tree clients. SOF No. 39.

The evidence also establishes that Perkins and Gilmore were aware of this prohibition because they reviewed, edited, and approved the Form ADVs.   SOF No. 41.   They also each signed an annual acknowledgment that they had read and understood the compliance manual that contained a Code of Ethics that explicitly described the prohibition against trading in securities also under consideration for investment by clients, and they both testified that they were aware of the prohibition. SOF No. 42-44.

It would have been important to World Tree's advisory clients to know that, contrary to the representations made to clients, World Tree's principals were trading in the same securities as their client in omnibus block trades that were later allocated to the clients and the principals, in amounts determined by Defendants. The largest client at the firm did not know that Perkins and World Tree were trading in the same securities he was.   SOF No. 46 (LeBlanc pp. 34:14-17.)   That same investor testified that he was aware that Defendants owed him a fiduciary duty and that he expected they would always trade in his best interest.   SOF No.

47 (*Id.* at 39:6-40-21.)   He further testified that the false and misleading misstatements concerning the prohibited transactions were important to him because he viewed an investment adviser's compliance (or the lack of compliance) with those provisions to be a key factor in his selection of an investment adviser. SOF No. 48 (*Id.* at 66:6-67:17.)

The failure to disclose the conflict of interest presented by Defendants' trading and allocating the same securities as their clients is the epitome of a material omission.   Investment advisers must tell their clients about "all conflicts of interest which might incline an investment adviser—consciously or unconsciously—to render advice which [is] not disinterested."   *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92 (1963) (adviser's practice of failing to disclose he was trading the same securities as his clients operated as a fraud or deceit because "whenever advice to a client might result in financial benefit to the adviser -- other than the fee for his advice – 'that advice to a client might in some way be tinged with that pecuniary interest [whether consciously or] subconsciously motivated . . .'"); *see also SEC v. Westport Capital Mkts. LLC*, 408 F. Supp. 3d 93 (Dist. Conn. 2019) (granting summary judgment against investment adviser that "failed to advise and obtain their clients' consent to transactions in which they sold securities to their clients as a principal and at profit from their own account").

### 2.    Defendants were the "makers" of the false statements

There can be no dispute that Defendants were responsible for making these representations to their clients.   Anyone who "makes" a misleading statement or omission, or who has "ultimate authority over" it, can be liable under Rule 10b-5(b).   *See Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).   Perkins and Gilmore each made World Tree's Form ADV brochure available to their advisory clients on regular occasions.   SOF No. 34.   Before providing them to World Tree's clients, Gilmore and Perkins both reviewed drafts

of the Forms ADV, and authorized the final version for filing and distribution to World Tree's clients.   SOF No. 35.   Either Perkins or Gilmore signed every World Tree Form ADV from 2011 to 2015.   SOF No. 36.   Each had ultimate control and authority over the contents of the form.   SOF No. 37.

Furthermore, unlike liability under Rule 10b-5(b), *Janus* has no bearing on claims under Section 17(a)(2) of the Securities Act.   *SEC v. Liu*, No. SACV 16-00974-CJC(AGRx), 2016 U.S. Dist. LEXIS 91078, *25 (C.D. Cal. July 11, 2016) ("[T]he vast majority of courts dealing with the question of whether *Janus* also applies to claims under Section 17 have answered that question with a resounding 'no.'") (quoting *SEC v. Benger*, 931 F. Supp. 2d 904, 905-06 (N.D. Ill. 2013)). Here, there can be no question that Defendants obtained money or property "by means of" false statements, even assuming – *contrary to the evidence* – that they did not make the statements at issue.   *SEC v. Big Apple Consulting, USA, Inc.*, 783 F.3d 786, 797 (11th Cir. 2015) (obtaining money by means of an untrue statement, under Section 17(a)(2), encompasses a broader range of conduct than making a statement as defined in Rule 10b-5(b)).   Similarly, *Janus Capital* has no application to Rule 10b-5(a) or (c).   *Id.*, at 796; *SEC v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014); *SEC. v. Familant*, 910 F. Supp. 2d 83, 94-6 (D.D.C. 2012).   In other words, the Court may grant the SEC's motion for summary judgment on these claims based on the undisputed evidence that Defendants derived money from the scheme to defraud, even if they did not "make" any of the statements behind the scheme.

### 3.   Defendants acted with scienter

Scienter is defined as a "mental state embracing intent to deceive, manipulate or defraud."   *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).   Negligence, by contrast, is the absence of "reasonable prudence."   *SEC v. Glt Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).   In the Fifth Circuit, scienter is established by a showing that the Defendants acted intentionally or with

severe recklessness.   *See Broad v. Rockwell Int'l Corp.*, 642 F. 2d 929 (5th Cir.) *en banc, cert. denied* 454 U.S. 965 (1981).   Courts may determine whether scienter is established as a matter of law on summary judgment.   *See, e.g., SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d at 1085; *SEC v. U.S. Sustainable Energy Corp.*, No. 08-cv-245, 2011 WL 2980549, at *14-15 (S.D. Miss. Jul. 21, 2011) (granting summary judgment against defendant for securities fraud).

Recklessness may be inferred from circumstantial evidence.   *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-91, n.30 (1983).   Scienter may be evidenced by a Defendant's acts of knowing misconduct, or by a Defendant's acts demonstrating recklessness.   *See Platforms Wireless*, 617 F.3d at 1085.   A defendant engages in knowing misconduct, for instance, when he creates documents that he knows are false.   *See, e.g., Suez Equity Investors, LP v. Toronto Dominion Bank*, 250 F.3d 87, 99-101 (2d Cir. 2001) (falsified records evidence of scienter); *SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1282 (D. Colo. 2006) (corporate accountant's deception of other accountants about the date of a contract establishes scienter).   And, "[r]epresenting information as true while knowing it is not. . . [is a] circumstance[] sufficient to support a conclusion of scienter."   *SEC v. Constantin*, 939 F. Supp. 2d 288, 308 (S.D.N.Y. 2013) (citing *SEC v. Universal Exp., Inc.*, 475 F. Supp. 2d 412, 424 (S.D.N.Y. 2007), *aff'd sub nom. SEC v. Altomare*, 300 Fed. Appx. 70 (2d Cir. 2008)).

Scienter may also be established through proof of recklessness.   *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001). "Deliberate ignorance . . . is a form of knowledge."   *SEC v. Jakubowski*, 150 F.3d 675, 682 (7th Cir. 1998). "An actor is reckless if he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [the actor] could have done so without extraordinary effort." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1063-65 (9th Cir. 2000) (citation omitted).

13

Here, the undisputed evidence demonstrates Defendants' scienter.   Perkins and Gilmore each knew, or were reckless in not knowing, that they were prohibited from trading in the same securities as their clients in their personal accounts, and that World Tree and Perkins's violation of that prohibition rendered World Tree's Forms ADV false and misleading.   SOF Nos. 28-45.   Perkins and Gilmore are both securities professionals who hold securities licenses.   SOF Nos. 7, 11, 12. Perkins and Gilmore were the principals of World Trade and controlled its operations.   SOF Nos. 6-12; 19-21.   As detailed above, they reviewed and had control of the contents of the firms Forms ADV.   SOF No. 41-44.   They both knew that they were block trading in the same securities as their clients.   SOF Nos. 25-27, 39, 45.   Perkins and Gilmore have each admitted that they were aware of the prohibition and that in retrospect, their trading in the same securities as their clients violated the prohibition.   SOF No. 43-44.   Accordingly, they knew, or were reckless in not knowing, or negligent in not knowing, that the representations being made to investors were false.   Because Perkins and Gilmore are co-owners and principals of the firm, their scienter and negligence in defrauding clients in the Forms ADV about the prohibited securities transactions are imputed to World Tree.   *See In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (scienter of senior controlling officers may be imputed to corporation); *SEC v. Manor Nursing Ctrs.*, 458 F.2d 1082, 1096-97, n.16-18 (2d Cir. 1979) (same).

### 4.    Defendants' Misstatements Were In Connection With the Purchase or Sale of Securities

Fraudulent statements are "in connection with" as long as they "touch" upon the purchase or sale of securities.   *Superintendent of Ins. v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13 (1971).   Where, as here, an investment adviser makes material false statements in order to attract or retain clients for whom it does or will exercise investment discretion over securities transactions, those statements satisfy the "in connection with" requirement.   *See, e.g., SEC v. K.W. Brown*, 555

14

F. Supp. 2d 1275, 1306 (S.D. Fla. 2007) (investment adviser's misrepresentations in Form ADV about its assets under management were "in connection with" adviser's purchase and sale of securities for its clients); *SEC v. Lauer*, No. 03-80612, 2008 WL 4372896, at*23 (S.D. Fla. Sep. 24, 2008) ("Statements or omissions made with regard to trading in general, not just particular transactions, meet the 'in connection with' requirement.").   Consequently, Defendants' false statements were clearly "in connection with" the purchase or sale of securities, and the SEC has also established this element.

Defendants thus violated the antifraud provisions of the federal securities laws – Section 17(a)(2) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and summary judgment on the SEC's Second and Fourth Claims is appropriate.

**C.    Defendants Violated Section 206(1) and 206(2) of the Advisers Act**

Summary judgment is also appropriate on the SEC's Fifth and Sixth Causes of action because the undisputed evidence shows that Perkins and World Tree directly violated Sections 206(1) and 206(2) of the Advisers Act and Gilmore aided and abetted their violations.   These Sections state that "[i]t shall be unlawful for any investment adviser … (1) to employ any device, scheme, or artifice to defraud any client or prospective client; [or] (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client."   15 U.S.C. §§ 80b-6(1), 15 U.S.C. §§ 80b-6(2).

**1.    World Tree and Perkins Violated the Advisers Act**

**a.    World Tree and Perkins Are Fiduciaries**

The Supreme Court has held that Section 206 establishes a statutory fiduciary duty for investment advisers to act for the benefit of their clients.   *See Transamerica Mortgage Adviser, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) ("Indeed, the Act's legislative history leaves no doubt that Congress intended to impose enforceable fiduciary obligations.").   As fiduciaries, they are required "to act for

the benefit of their clients, … to exercise the utmost good faith in dealing with clients, to disclose all material facts, and to employ reasonable care to avoid misleading clients." *SEC v. DiBella*, No. 3:04-cv-1342 (EBB), 2007 WL 2904211, at *12 (D. Conn. Oct. 3, 2007) (*quoting SEC v. Moran*, 922 F. Supp. 867, 895-96 (S.D.N.Y. 1996)), *aff'd*, 587 F.3d 553 (2d Cir. 2009); *see also SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194 (1963) ("Courts have imposed on a fiduciary an affirmative duty of 'utmost good faith, and full and fair disclosure of all material facts,' as well as an affirmative obligation 'to employ reasonable care to avoid misleading' his clients.").

Here, the evidence shows that Defendants have violated their fiduciary obligations as investment advisers.   As a threshold matter, Perkins and World Tree are investment advisers.   The Advisers Act defines an "investment adviser" as a "person who, for compensation, engages in the business of advising others … as to the value of securities or as to the advisability of investing in, purchasing, or selling securities…."   15 U.S.C. § 80b-2(a)(11); Investment Advisers Act Release No. 1092 (Oct. 8, 1987) (person who "holds himself out" as an investment adviser considered to be "in the business" of providing advice).   Here, this definition clearly applies.   World Tree has been registered as an investment adviser with both the SEC and the State of Louisiana.   SOF Nos. 2-4.   Moreover, Perkins and World Tree have discretionary authority over most of their clients' securities accounts.   SOF No. 22.   Both World Tree and Perkins were compensated for this work.   SOF Nos. 14, 53.   For its investment advice, World Tree charges clients an advisory fee that ranges between 0.5% to 1.5% of the client's assets under management. SOF No. 14.   Perkins was paid a salary, bonus, ad other compensation from those fees.   SOF No. 53.   From March 2011 through September 2015, World Tree managed between approximately $40 million and $70 million in client assets.   SOF No. 15.   Thus, World Tree and Perkins are investment advisers.   S*ee, e.g.*, *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d

Cir. 1977), *cert. denied,* 436 U.S. 905, *and cert. denied,* 436 U.S. 913 (1978) (general partners of investment partnership, who received salaries and percentages of net profits, generated monthly reports providing investment advice to limited partners, and controlled purchases and sales by the partnership, were investment advisers); *U.S. v. Elliott*, 62 F.3d 1304 (11th Cir. 1996) (holding managers of several investment companies who were operating a Ponzi scheme qualified as investment advisers).

### b.   Perkins and World Tree Breached Their Duties and Violated the Advisers Act

As investment advisers, Perkins and World Tree breached their fiduciary duties to their clients and violated the Advisers Act.   They breached these duties by informing clients that they would not engage in any transactions on their own behalf "in a security which is being actively purchased or sold, or is being considered for the purchase or sale, on behalf of World Tree's clients" while all the while purchasing securities and allocating them to accounts under Perkins' and Gilmore's ownership and/or control and World Tree clients through World Tree's omnibus account.   SOF Nos. 28-45.

### c.   Perkins and World Tree Acted with Scienter

Finally, Perkins and World Tree acted with scienter.   Scienter is a required element for a violation of Section 206(1), and, as with the SEC's Section 10(b) claim, scienter may be evidenced by a Defendant's acts of knowing misconduct, or by a Defendant's acts demonstrating recklessness. *See Platforms Wireless*, 617 F.3d at 1085.   On the other hand, a showing of negligence is sufficient to establish a violation of Section 206(2).   *See Steadman v. SEC*, 603 F.2d 1126, 1132-34 (5th Cir. 1979).   Here, as discussed above, Defendants intentionally disseminated Forms ADV for five years that failed to disclose they were routinely trading in the same securities in block trades with their clients or, at a minimum, they did so with negligence and recklessness.   SOF Nos. 28-45.

### 2. Gilmore Aided and Abetted World Tree and Perkins Violations

A defendant can be found liable for aiding and abetting another's violation if the Commission establishes that: (1) another party has committed a securities law violation; (2) the aider and abettor has a "general awareness" of his role in the violation; and (3) the aider and abettor "knowingly rendered substantial assistance" in the violation. *See Abbot v. Equity Group, Inc.*, 2 F.3d 613, 621 (5th Cir. 1993). In this context, "substantial assistance" means only that the defendant "in some sort associate[d] himself with the venture, that [the defendant] participate[d] in it as in something that he wishe[d] to bring about, [and] that he [sought] by his action to make it succeed." *SEC v. Apuzzo*, 689 F.3d 204, 212 (2d Cir. 2012) (citation omitted).

Gilmore knew or was reckless in not knowing that the representations in World Tree's Forms ADV concerning prohibited transactions were false and she played a substantial role in Perkin's and World Tree's violations.   She reviewed the ADVs; she signed acknowledgements that she had read World Tree's compliance manual; and she verified the trade allocations to clients and accounts for the benefit of Defendants made from the omnibus account.   SOF Nos. 40-45. There can be no dispute that she knew that Defendants were block trading in the same securities as World Tree's clients despite the representations in World Tree's Forms ADV.   SOF No. 45.   She clearly "associate[d] himself with the venture, . . . participate[d] in it as in something that [s]he wishe[d] to bring about, [and] . . . [sought] by [her] action to make it succeed.'"  *Apuzzo*, 689 F.3d at 212.   Gilmore thus aided and abetted World Tree's and Perkins' Advisers Act violations.

### D. The Court Should Issue Permanent Injunctions

Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d), and Section 209(e) of the Advisers Act all provide that when the evidence establishes a reasonable likelihood of a future

violation of the securities laws, a permanent injunction shall be granted in enforcement actions brought by the SEC.   *SEC v. Murphy*, 626 F.2d at 633; *SEC v. Koracorp Indus., Inc.*, 575 F.2d 692 (9th Cir. 1978); *SEC v. Fehn*, 97 F.3d 1276, 1295-96 (9th Cir. 1996).   Factors to be considered include the degree of scienter involved; the isolated or recurrent nature of the infractions; the defendant's recognition of the wrongful nature of his conduct; the likelihood that, based on the defendant's occupation, future violations might occur; and the sincerity of the defendant's assurances against future violations.   *Id.*   Here, the totality of the circumstances weighs in favor of permanent injunctions against these Defendants. Perkins and Gilmore acted with a high degree of scienter, and their scienter can be imputed to World Tree, the entity they controlled.   In addition, the conduct of all the Defendants extended over a period of years from 2011 to 2015, and there is no evidence that they have recognized the wrongful nature of their conduct, nor provided any assurances against future violations.   The Court should therefore enter permanent injunctions against future violations.

### E.   The SEC Reserves Its Request For Monetary Relief

It is well-settled that this Court has "'broad equity powers to order the disgorgement of ill-gotten gains'" obtained through a defendant's violation of the securities laws.   *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (*quoting SEC v. First Pacific Bancor*p, 142 F.3d 1186, 1191 (9th Cir. 1998)).   "'Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable.'"   *Id*.; *JT Wallenbrock*, 440 F.3d at 1113; *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993) (disgorgement is an appropriate equitable remedy for violations of the securities laws).   In *Liu v. SEC*, the Supreme Court recently reaffirmed the Commission's authority to seek and the Court's authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims."   *Liu v. SEC*, 140 S. Ct. 1936, at 1940 (2020); *see SEC v. Janus Spectrum*

19

*LLC, Nos*. 17-17042, 18-15403, 2020 U.S. App. LEXIS 20710, at *3 (9th Cir. July 1, 2020).   *Liu* did not disturb the principle that "[d]isgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" *Platforms Wireless*, 617 F.3d at 1096.

Defendants are also liable for penalties under Sections 20(d) and 21(d)(3) of the Securities and Exchange Act.   *See* 15 U.S.C. §§ 77t(d), 78u(d)(3).   Civil penalties are meant to punish wrongdoers and to deter them and others from future securities law violations.   *See Kenton Capital*, 69 F. Supp. 2d at 17.   The deterrence of securities law violations through the imposition of monetary sanctions serves several important goals, including encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry.   *See SEC v. Palmisano*, 135 F.3d 860, 866 (2d Cir. 1998).   Under Section 20(d)(2)(A) of the Securities Act and Section 21(d)(3)(B), the amount of any civil penalty "shall be determined by the court in light of the facts and circumstances."   15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B).

Because this motion is for partial summary judgment on the SEC's claims, the SEC reserves the right to substantiate its request for monetary relief at the conclusion of this matter.

## F.   There Are No Genuine Issues of Material Fact on Certain Elements of the SEC's Claims

Several of the SEC's claims contain elements which cannot reasonably be disputed by Defendants, and which the Court can and should decide as a matter of law. Specifically, there is no reason for the SEC to be required to use trial time to present evidence on the issue of whether Perkins and World Tree are "investment advisers" or whether the acts here involved interstate commerce.

First, the Fifth and Sixth Claims are based on violations of the Investment Advisers Act.   Perkins and World Tree's status as "investment advisers," as that term is defined by Section 202(a)(11) of the Act, is therefore an element of each of

these causes of action.   Perkins and World Tree's status as investment advisers under the Act cannot reasonably be disputed.   As set forth in detail above, Perkins and World Tree both gave investment advice for compensation.   SOF Nos. 14, 53. World Tree was a registered investment advisor, with discretionary control over most of its client accounts and Perkins made all of the investment decisions at the firm.   SOF Nos. 2-4, 7, 13-21, 24-25.   "Making investment recommendations and controlling clients' investments qualify as providing investment advice under the Advisers Act."   *SEC v. Battoo*, 158 F. Supp. 3d 676, 698 (N.D. Ill. 2016) (citations omitted); *see also Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977) ("we believe that the general partners as persons who managed the funds of others for compensation are 'investment advisers' within the meaning of the statute").   Summary judgment on this element of the two claims is therefore appropriate even if the Court does not grant summary judgment on the entirety of the claim.

Second, the First through Fifth causes of action all contain an element requiring that the transactions occurred in interstate commerce.   As set forth above, the transactions here involved communications using email and the telephone, and the securities trading occurred on a national securities exchange. Summary judgment on this element of the First through Fifth Claims is therefore appropriate.

## IV.   **CONCLUSION**

Based on the undisputed evidence, the SEC is entitled to summary judgment as

to liability on its Second, Fourth, Fifth and Sixth Claims, and as to the elements of "investment adviser" and "interstate commerce."

August 31, 2020                         Respectfully submitted,


                                        */s/ Lynn M. Dean*
                                        Lynn M. Dean (Cal. Bar. 205562)
                                        Securities and Exchange Commission
                                        444 S. Flower St., 9th floor
                                        Los Angeles, CA 90071
                                        Telephone:   (323) 965-3998
                                        Facsimile:   (213) 443-1904
                                        Email:       deanl@sec.gov




                                        */s/ Karen J. King*
                                        KAREN J. KING (#23508)
                                        Assistant United States Attorney
                                        800 Lafayette Street, Suite 2200
                                        Lafayette, Louisiana 70501
                                        Telephone:   (337) 262-6618
                                        Facsimile:   (337) 262-6693
                                        Email:       karen.king@usdoj.gov