## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>         Plaintiff,<br><br>vs.<br><br>WORLD TREE FINANCIAL, LLC, WESLEY KYLE PERKINS, and PRISCILLA GILMORE PERKINS,<br><br>         Defendants. | Case No. 6:18-CV-01229-MJJ-CBW<br><br>DISTRICT JUDGE MICHAEL J. JUNEAU<br><br>MAGISTRATE JUDGE CAROL B. WHITEHURST |

## SECURITIES AND EXCHANGE COMMISSION'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to L.R. 56.1, Plaintiff Securities and Exchange Commission "SEC") hereby files this Statement of Material Facts That Present No Genuine Issue in support of its Motion for Partial Summary Judgment filed concurrently with this Statement of Facts, and in support thereof, respectfully shows as follows:

### A.    Defendants

1.    Defendant World Tree Financial, LLC is a Louisiana corporation with its principal place of business in Lafayette, Louisiana.   Appendix of Evidence on Support of Motion for Partial Summary Judgment ("App."), filed concurrently herewith, at Ex. 2 and 3 (Complaint and Answer ¶ 8).

2.    World Tree was an SEC-registered investment adviser until June 15, 2012, when it withdrew its SEC registration.   App. at Ex. 2 and 3 (Complaint and

Answer ¶ 8).

3.      World Tree was registered as an investment adviser with the State of Louisiana at the time this lawsuit was filed.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 8).

4.      As of March 2018, World Tree had assets under management of over $54 million and 161 advisory clients.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 9).

5.      Defendant Wesley Kyle Perkins ("Perkins") is a resident of Lafayette, Louisiana.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 10).

6.      Perkins co-founded World Tree in 2009, and has been the firm's 60% owner, chief executive officer, and chief investment officer since World Tree's inception.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 10).

7.      Perkins holds Series 6, 7, and 66 securities licenses.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 10).

8.      Perkins married co-defendant Priscilla Gilmore Perkins ("Gilmore") in 2017.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 10).

9.      Defendant Gilmore is a resident of Lafayette, Louisiana.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 11).

10.      Since co-founding World Tree with Perkins in 2009, Gilmore has been the firm's 40% owner, chief financial officer, chief compliance officer, and chief operating officer.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 11).

11.      Gilmore holds Series 6, 7 and 66 securities licenses.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 11).

**B.      World Tree's Formation and Operation**

12.      In 2009, Perkins and Gilmore left a firm where they had both worked as financial advisers, and co-founded World Tree.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 12).

13.     More than 75 percent of World Tree's advisory clients are individual investors.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 14); Ex. 4 (Perkins Trans. at pp. 186:19-24; 189:11-24).

14.     For its investment advice, World Tree charges clients an advisory fee that ranges between 0.5% to 1.5% of the client's assets under management.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 15).

15.     From March 2011 through September 2015, the assets under management at World Tree varied, and at times were between approximately $40 million and $70 million.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 17).

16.     World Tree and Perkins purportedly assigned each of their clients to one of five stock "investment models," but in reality, they utilized the same basic stock trading strategy across the majority of their client accounts.   App. at Ex. 4 (Testimony Transcript of Wesley Perkins ("Perkins Trans.") at pp. 145:6-146:12; 237:8-243:24; 251:24-252:20); Ex. 5 (Testimony Transcript of Priscilla Gilmore ("Gilmore Trans.") at pp. 147:14-149: 15).

17.     World Tree clients held different amounts of stocks in their respective accounts at any one time, depending on the respective size of their account.     App. at Ex. 4 (Perkins Trans. at pp. 237:8-243:24; 251:24-252:20); Ex. 5 (Gilmore Trans. at pp. 147:14-149:15)

18.     At all relevant times, Perkins and Gilmore jointly controlled World Tree.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 22); Ex. 4 (Perkins Trans. at pp. 52:14-53:23); Ex. 5 (Gilmore Trans. at pp. 32:20-33:8); Ex. 24 (Testimony Exhibit ("Test. Ex.") 7).

19.     As World Tree's chief investment officer, Perkins was solely responsible for managing all the securities trading, including allocating trades placed through the firm's omnibus account to clients.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 23); Ex. 4 (Perkins Trans. at pp. 54:5-55:18).

20.     As World Tree's chief compliance officer, chief financial officer and chief operating officer, Gilmore ran World Tree's office operations and supervised all aspects of the firm's compliance program.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 24); Ex. 5 (Gilmore Trans. at pp. 29:6-33:8; 37:25-38:15; 57:13-17; 71:17-74:21; 82:17-83:1); Ex. 24 (Test. Ex. 7); Ex. 18 (Test. Ex. 13 at Bates 548-553).

### C.     Securities Trading at World Tree

21.     World Tree manages most of its clients' assets on a discretionary basis, meaning it has authorization to trade securities on behalf of most of its clients.   App. at Ex. 4 (Perkins Trans. 193:23-194:9).

22.     From December 2009 to October 2015, World Tree traded through the brokerage platform of a registered broker-dealer ("Broker").   App. at Ex. 2 and 3 (Complaint and Answer ¶ 27); Ex. 4 (Perkins Trans. 83:18-84:24); Ex. 5 (Gilmore Trans. at pp. 39:4-40:23).

23.     The Broker also acted as the custodian for World Tree's client accounts, meaning that a third-party held the securities on the clients' behalf. App. at Ex. 2 and 3 (Complaint and Answer ¶ 27); Ex. 4 (Perkins Trans. 83:18-84:24); Ex. 5 (Gilmore Trans. at pp. 39:4-40:23).

24.     Defendants generally traded for both themselves and the clients through an omnibus trading account held at the Broker where trades were made as a block and then later allocated by Defendants to themselves and/or the individual clients' accounts.   App. at Ex. 4 (Perkins Trans. 36:16-37:15).

25.     The trades and the allocations were transmitted to the Broker by Perkins, who created a spreadsheet with the allocations and uploaded it to the Broker's website.   App. at Ex. 4 (Perkins Trans. 83:18-84:24); App. at Ex. 5 (Gilmore Trans. at pp. 53:25-55:1).

26.     The majority of the trade allocations that Perkins transmitted to the

Broker from the omnibus account were sent after the market closed and unrealized gains and losses were known.   Ex. 4 (Perkins Trans. at pp. 285:6-25; 148:2-15).

27.    Perkins made the majority of the trades at World Trade and determined how the trades were allocated.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 23).

### D.    The Material False Statements in World Tree's Forms ADV

28.    A Form ADV is a document required to be filed with the SEC by investment advisers registered with the SEC.   App. at Ex. 6 (17 CFR § 279.1).

29.    The filing consists of two parts—Part 1 contains "check-the-box" information about the firm, and Part 2 is a brochure, in narrative form, which describes key information about the firm, including the types of services the firm provides.   *See, e.g.* App. at Ex. 7 (Test Ex. 15); Ex. 8 (Test. Ex. 19).

30.    An investment adviser's Form ADV must be updated at least annually.   App. at Ex. 9 (17 CFR § 275.204-1(a)).

31.    While it was registered with the SEC, World Tree, through Perkins or Gilmore, delivered its Form ADV, Part 2A brochure to clients at the time it entered into an advisory contract with them, and made it available to clients annually. App. at Ex. 2 and 3 (Complaint and Answer ¶ 65); Ex. 4 (Perkins Trans. at pp. 196:3-22); Ex. 5 (Gilmore Trans. 112:5-114:14; 116:8-14); Ex. 11 (Priscilla Perkins Deposition Transcript ("PP Depo.") at pp. 62:2-22; 63:20-64:7; 68:23-69:5; 69:14-23; 71:10-19; 72:3-13); Ex. 10 (Depo Ex. 63 at pp. 314, 324, 334, 343, 349).

32.    World Tree's Forms ADV, Part 2A were also available online through the SEC's website.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 66).

33.    After World Tree became a Louisiana state-registered investment adviser in June 2012, it filed its Forms ADV annually with the Investment Adviser Registration Depository; those filings were also publicly available on the internet.

App. at Ex. 2 and 3 (Complaint and Answer ¶ 67).

34.    World Tree's Form ADV brochure was made available to its advisory clients at regular intervals as required by law.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 68).

35.    Before providing them to World Tree's clients and filing them with the SEC, Gilmore and Perkins both reviewed drafts of the Forms ADV, and authorized the final version for filing and distribution to World Tree's clients. App. at Ex. 2 and 3 (Complaint and Answer ¶ 69); Ex. 4 (Perkins Trans. at pp. 196:3-198:9; 201:8-202:24; 208:7-24; 210:7-211:10; 212:12-15; 213:4-216:8); Ex. 5 (Gilmore Trans. at pp. 116:15-120:14).

36.    Either Perkins or Gilmore signed every World Tree Form ADV from 2011 to 2015.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 70).

37.    Perkins and Gilmore had ultimate control and authority over the contents of the Forms ADV.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 70).

38.    Item 11 of World Tree's Forms ADV, part 2a filed on March 15, 2011, February 7, 2012, June 5, 2012, March 25, 2013, March 18, 2014, and February 9, 2015 stated that:

> (i) "none of World Tree's Access Persons [Perkins and Gilmore] may effect for themselves or for their immediate family (i.e., spouse, minor children, and adults living in the same household as the Access Person) any transactions in a security which is being actively purchased or sold, or is being considered for the purchase or sale, on behalf of World Tree's clients"; and

> (ii) "no Access Person may purchase or sell … any Securities … if the Access Person knows or reasonably should know that the Security, at the time of purchase or sale (i) is becoming considered for purchase or sale on behalf of any client Account, or (ii) is being actively purchased or sold on behalf of any Client Account."

App. at Ex. 2 and 3 (Complaint and Answer ¶ 74); Ex. 4 (Perkins Trans. at

pp. 196:3-22; 201:8-202:24; 208:7-24; 210:7-211:10; 212:12-15; 213:4-216:8); Ex. 5 (Gilmore Trans. at pp. 120:24-122:5; 126:6-127:6; 127:7-128:7; 128:17-129:19; 129:20; 130:25; 131:1-22; 131:23-133:5); Ex. 8 (Test. Ex 19 at p. WTF 336); Ex. 12 (Test. Ex. 20 at p. WTF 299); Ex. 13 (Test. Ex. 21 at p. WTF 356); Ex. 14 (Test. Ex. 22 at p. WTF 407); Ex. 15 (Test. Ex. 23 at p. WTF 373); Ex. 16 (Test. Ex. 24 at p. WTF 239).

39.    On 692 occasions between July 1, 2012 through July 14, 2015, Perkins allocated trades from World Tree's omnibus account to accounts under Perkins' and Gilmore's ownership and/or control while simultaneously allocating trades in those same securities for World Tree clients.   App. at Ex. 22 (Declaration of Cathy Niden at ¶¶ 2-4).

40.    Perkins and Gilmore each signed acknowledgments that they had read and understood the World Tree compliance manual.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 80), Ex. 4 (Perkins Trans. at pp. 126:7-133:16; 134:16-24); Ex. 5 (Gilmore Trans. at pp. 69:22-71:9; 71:15-72:8; 73:17-74:21; 106:10-18; 106:22-108:25); Ex. 11 (PP Depo. at pp. 56:15-60:19); Ex. 17 (Depo. Ex. 62).

41.    The compliance manual explicitly described the prohibition against trading in securities also under consideration for investment by clients.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 80); Ex. 4 (Perkins Trans. 169:25-171:13; 173:5-17)); Ex. 5 (Gilmore Trans. at pp. 98:20-100:17; 107:7-22); Ex. 18 (Test. Ex. 13 at p. WTF 632); Ex. 19 (Test. Ex. 14 at p. WTF 511).

42.    In August 2015, World Tree amended part 2A of its Form ADV after its broker noticed that Perkins and Gilmore were trading the same securities as their clients in their personal accounts.   Rather than stop such trading, they amended the Form ADV to disclose they could trade in the same securities as World Tree's clients using the omnibus account.   App. at Ex. 4 (Perkins Trans. 216:9-220:9); Ex. 5 (Gilmore Trans. 41:12-20; 48:25-49:17; 82:3-16; 132:1-

138:21); Ex. 11 (PP Depo. at pp. 34:1-35:24; 38:13-23; 41:1-42:15); Ex. 20 (Depo

Ex. 59); Ex. 21 (Depo Ex. 60 at WTF 15460).

43.    Both Perkins and Gilmore testified that they were aware of the

prohibition in the World Tree compliance manual and Forms ADV against trading

the same securities that World Tree and Perkins were trading for clients.   App. at

Ex. 4 (Perkins Trans. pp. 196:3-22; 201:8-202:24; 208:7-24; 210:7-211:10;

212:12-15; 213:4-216:8); Ex. 5 (Gilmore Trans. at pp. 68:21-72:8; 98:20-102:8;

132:1-138:21); Ex. 18 (Test. Ex. 13 at p. WTF 632); Ex. 19 (Test. Ex. 14 at p.

WTF 511); Ex. 8 (Test. Ex 19 at p. WTF 336); Ex. 12 (Test. Ex. 20 at p. WTF

299); Ex. 13 (Test. Ex. 21 at p. WTF 356); Ex. 14 (Test. Ex. 22 at p. WTF 407);

Ex. 15 (Test. Ex. 23 at p. WTF 373); Ex. 16 (Test. Ex. 24 at p. WTF 239).

44.    Perkins and Gilmore both testified that, in retrospect, the block trading

they did with their clients violated the prohibition against such trades.   App. at Ex.

4 (Perkins Trans. 169:25-173:12; 219:1-17); Ex. 5 (Gilmore Trans. at pp. 98:20-

102:8; 132:1-138:21).

45.    Gilmore was aware of the improper trading on her and her husband's

behalf because she verified the allocations on the next trading day as part of her

daily responsibilities.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 87); Ex. 4

(Perkins Trans. at pp. 149:21-150:24); Ex. 5 (Gilmore Trans. at pp. 60:6-61:7;

90:6-23).

46.    The largest client at the firm did not know that Defendants were

trading in the same securities he was.   App. at. Ex. 23 (LeBlanc Trans. pp. 34:14-

17); Ex. 4 (Perkins Trans. at pp. 380:1-6; 387:3-15).

47.    That same client testified that he was aware that Defendants owed him

a fiduciary duty and that he expected they would always trade in his best interest.

App. at Ex. 23 (LeBlanc Trans. pp. 39:6-40:21).

48.    World Tree's largest client further testified that the false and

misleading misstatements concerning the prohibited transactions were important to him because he viewed an investment adviser's compliance with the provisions in its disclosure documents to be a key factor in his selection of an investment adviser.   App. at Ex. 23 (LeBlanc Trans. pp. 66:6-67:17).

### E.   World Tree and Perkins Were Investment Advisers

49.    During all relevant times, World Tree and Perkins acted as investment advisers.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 91).

50.    World Tree provided investment advice to clients in exchange for a fee calculated as a percentage of assets under management.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 92).

51.    World Tree was an SEC-registered investment adviser through June 2012, and was a Louisiana state-registered investment adviser at the time this action was commenced.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 93).

52.    Perkins made the investment decisions for the securities trading in World Tree accounts.   App. at Ex. 2 and 3 (Complaint and Answer ¶ 94).

53.    Perkins was compensated for acting as an investment adviser and managing World Tree client accounts and directly benefitted from the advisory fees World Tree earned in the form of salary, bonuses, and benefits.   App. at Ex. 4 (Perkins Trans. pp. 76:10-78:16; 81:13-83:9).

August 31, 2020                              Respectfully submitted,

*/s/ Lynn M. Dean*
Lynn M. Dean (Cal. Bar. 205562)
Securities and Exchange Commission
444 S. Flower St., 9th floor
Los Angeles, CA 90071
Telephone:   (323) 965-3998
Facsimile:   (213) 443-1904
Email:        deanl@sec.gov

/s/ *Karen J. King*
KAREN J. KING (#23508)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone:   (337) 262-6618
Facsimile:   (337) 262-6693
Email:        karen.king@usdoj.gov