## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> WORLD TREE FINANCIAL, LLC, WESLEY KYLE PERKINS, and PRISCILLA GILMORE PERKINS, <br><br> Defendants. | Case No. 6:18-CV-01229-MJJ-CBW <br><br> DISTRICT JUDGE MICHAEL J. JUNEAU <br><br> MAGISTRATE JUDGE CAROL B. WHITEHURST |

### SECURITIES AND EXCHANGE COMMISSION'S POST-TRIAL BRIEF IN SUPPORT OF ITS CLAIMS AGAINST PRISCILLA GILMORE PERKINS

Plaintiff Securities and Exchange Commission respectfully files this Post-Trial Brief in Support of its Claims against Defendant Priscilla Gilmore Perkins.   Over four trial days, the SEC established all of its claims against Defendants World Tree Financial, Wesley Perkins, and Priscilla Gilmore Perkins.   In light of the Court's admonitions regarding the need for additional briefing, the SEC will not address the core cherry-picking evidence or claims, or its claims against World Tree and Mr. Perkins.   Instead, the SEC seeks only to highlight how the evidence at trial and stipulated facts overwhelmingly establish that Mrs. Perkins acted with the requisite mental state in making material misrepresentations under (1) Section 17(a)(2) of the Securities Act of 1933 ("Securities Act") [Claim 4], and (2) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5(b) thereunder [Claim 2].

**I.**   **The Evidence Established that Mrs. Perkins Obtained Money or Property By Means of Materially Misleading Statements in Violation of Securities Act Section 17(a)(2)**

**A.  The Legal Standard**

To establish a violation of Section 17(a)(2) of the Securities Act, the SEC must prove that a defendant:   (1) obtained money or property, (2) in the offer or sale of a security in interstate commerce; (2) by means of a material false statement or omission; and (3) acting with at least negligence.   *See* 15 U.S.C. § 77q(a)(2); *SEC v. Glt Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).

Violations of Section 17(a)(2) may be satisfied by a showing of negligence.   *Aaron v. SEC*, 446 U.S. 680 (1980); *SEC v. Hopper*, 2006 U.S. Dist. LEXIS 17772 at *30 (S.D. Tex. Mar. 24 2006).   Negligence is the absence of "ordinary prudence."   *Norfolk Southern Ry. v. Sorrell*, 549 U.S. 158, 169 (2007); *Glt Dain Rauscher, Inc.*, 254 F.3d at 856.

## B.   At a Minimum, Mrs. Perkins Negligently Made False Statements of Material Fact

The evidence at trial established, at a minimum, that Mrs. Perkins negligently made untrue statements of material fact in World Tree's Forms ADV with respect to the prohibition against Mr. and Mrs. Perkins trading in the same securities as their clients.[1]   Mrs. Perkins' efforts at trial to distance herself from her prior admissions and her strained exculpatory interpretations of the provision in World Tree's Form ADV should be rejected.

Mrs. Perkins was the chief compliance officer of World Tree.   She was a trusted professional, whose job it was to make sure that rules were being followed.   (Dkt. 70 (Pre-Trial Order) at 43-44, Factual Stipulation ("Stip") No. 44 ("World Tree's compliance manual states that the firm "maintains strict compliance with all applicable laws, rules and regulations," and identifies trade allocation as an area of potential conflict of interest that required additional monitoring by the firm's chief compliance officer.")   The Form ADV is a document filed with the

---

1  The evidence at trial also establishes World Tree's and Mr. Perkins' liability as to this claim.

SEC by investment advisers (Stip. No. 25.), including Mrs. Perkins, and it was given to each of World Tree's clients.

For the relevant time period, World Tree's Forms ADV stated:

(i) "none of World Tree's Access Persons [Perkins and Mrs. Perkins] may effect for themselves or for their immediate family (i.e., spouse, minor children, and adults living in the same household as the Access Person) any transactions in a security which is being actively purchased or sold, or is being considered for the purchase or sale, on behalf of World Tree's clients" (Stip. No. 35.);

(ii) "no Access Person may purchase or sell … any Securities … if the Access Person knows or reasonably should know that the Security, at the time of purchase or sale (i) is becoming considered for purchase or sale on behalf of any client Account, or (ii) is being actively purchased or sold on behalf of any Client Account," (Stip. No. 35.); and

(iii) "World Tree and persons associated with World Tree ("Associated Persons") are permitted to buy or sell securities that it also recommends to its clients consistent with World Tree's policies and procedures." (Pl. Ex. 20.).

Mrs. Perkins was aware of and understood these provisions.   She reviewed drafts of the Forms ADV, and authorized the final version for filing and distribution to World Tree's clients. (Stip. No. 32.)   Either Mr. Perkins or Mrs. Perkins signed every World Tree Form ADV from 2011 to 2015.   (Stip. No. 33.)   And, as the chief compliance officer for World Tree, she had ultimate control and authority over the contents of the Forms ADV.   (Stip. No. 34.)   Moreover, when Schwab investigator Grant Moore questioned Mrs. Perkins regarding the readily apparent prohibition against block trading with clients, Mrs. Perkins went to her consultants to revise the firm's disclosures to clients.

Despite Mrs. Perkins' attempt to backtrack at trial, the Defendants *stipulated* that Mrs. Perkins testified that she was "aware of the prohibition in the World Tree compliance manual and Forms ADV against trading the same securities that World Tree and Perkins were trading for clients." (Stip. No. 40.)   She admitted at trial that she and Mr. Perkins were "access persons," and

that "associated persons" encompassed a broader group of people, including, for example, her assistants, Catherine Ann Venable and Becky Broussard.

She admitted at trial that during her investigative testimony, the first time she was questioned about these provisions by the SEC, she conceded that World Tree violated the prohibition "numerous times" over the course of several years.   The evidence, therefore, clearly shows that she was negligent, if not reckless, in making the untrue statements that she and Mr. Perkins were not participating in the same block purchases as their clients.

During trial, however, Mrs. Perkins attempted to walk back her prior testimony (and a stipulated fact), by claiming she was "intimidated by the process" and made "mistakes" during her sworn SEC testimony.   At trial, Mrs. Perkins testified that "there's no difference between associated persons and access persons," and thus Mr. Perkins did not violate the provision by purchasing securities for the Perkins' accounts along with World Tree's clients.   The Court should reject that explanation for what it is—an obvious attempt by Mrs. Perkins to avoid responsibility for her actions.

Mrs. Perkins' newly asserted construction of the provision is nonsensical, and Defendants introduced no evidence that she had any confusion about its meaning prior to taking the witness stand at trial.   As an initial matter, when she testified before the SEC that the "access persons" restriction had been violated, she was under oath and her counsel was present.   Moreover, the evidence at trial showed that, two months before Mrs. Perkins admitted during her sworn SEC testimony that World Tree violated the policy, Mr. Perkins told her exactly why he thought the SEC was investigating them: "it's going to boil down to how many trades were allocated to Matt/Del that ended up positive versus how many were allocated to us that ended positive."   (PL. Ex. 67 at WTF-00016300.)   Thus, she knew that the SEC was particularly interested in World Tree's block trading practices, despite denying that fact on the witness stand at trial.

If there was any lingering doubt, the Court's questioning during trial exposed the flaw in Mrs. Perkins' self-interested reasoning.   When asked by the Court why Mr. Perkins' purchases along with his clients "didn't violate" the provision restricting such purchases by "access persons," Mrs. Perkins testified that "[h]e did not violate the provision because it states here that we (Associated Persons) are able to participate in transactions with clients."   But, as the Court pointed out, and Mrs. Perkins admitted, "access persons," "is a subset of associated [persons]."   Despite the clarity of these provisions, Mrs. Perkins continued to insist that the provision restricting purchases by "access persons" applies to nobody "[b]ecause every access person is an associated person." Mrs. Perkins even went so far as to agree with the Court that the "access persons" provision, under her construction, was rendered "meaningless," even though it was *her* duty to create, edit and ensure compliance with World Tree's compliance policies.   The Court should not credit this after-the-fact testimony.   If anything, Mrs. Perkins' last-minute denials and ever-changing story suggest that her misstatements were not merely negligent, but reckless or intentional.

The representation in the Form ADV that Access Persons would not trade in the same securities as firm clients at the same time was materially false and misleading.   As a threshold matter, it was undisputed at trial that the statement was false; Mr. Perkins repeatedly allocated portions of block trades to his and Mrs. Perkins' accounts from trades shared with other firm clients.   This falsehood was also material.   A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision or if the information would significantly alter the total mix of available information.   *See TSC Indus.*, 426 U.S. at 449; *United States v. Bruteyn*, 686 F. 3d 318, 323 (5th Cir. 2012).   "The question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor."   *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 457 (2013), *quoting TSC Industries,* 426 U.S. at 445.

5

Mrs. Perkins admitted at trial that her husband's cherry picking could not have taken place if she had enforced the Form ADV's prohibition.   That fact alone makes her misrepresentation material.   A reasonable client would certainly want to know whether a prohibition that could prevent serious misconduct was being enforced – or whether it was being treated as simply "meaningless."   This provision was so important that World Tree had an entire section of its Form ADV dedicated to the prohibition, and others like it, called the "Code of Ethics."   Clients expect investment advisers to enforce rules set up to protect their interests, even if they do not always scrutinize or know the details of those rules.   *Cf. ZPR Investment Mgmt. Inc. v. SEC*, 861 F.3d 1239, 1249 (11th Cir. 2017) (upholding as supported by substantial evidence an SEC finding of materiality with respect to an investment adviser's representation that it complied with voluntary standards for computing performance).   Accordingly, at a minimum, Mrs. Perkins negligently misrepresented a material fact to World Tree clients.

## II.     Mrs. Perkins, Acting with Scienter, Made Material Misrepresentations to Clients in Violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) Thereunder

### A.  The Legal Standard

The SEC has also alleged violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(b) thereunder, 17 C.F.R. §§ 240.10b-5(b).   Under Rule 10b-5(b), it is prohibited "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."   17 C.F.R. § 240.10b-5(b).   Rule 10(b)-5 requires a showing of scienter.

In the Fifth Circuit, scienter is established by a showing that a defendant acted intentionally or with severe recklessness.   *See Broad v. Rockwell Int'l Corp.*, 642 F. 2d 929 (5th Cir. 1981) *en banc, cert. denied* 454 U.S. 965 (1981).   "An actor is reckless if he had reasonable

grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although [the actor] could have done so without extraordinary effort."  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1063-65 (9th Cir. 2000) (citation omitted). "Deliberate ignorance . . . is a form of knowledge."  *SEC v. Jakubowski*, 150 F.3d 675, 682 (7th Cir. 1998).

### B.  Mrs. Perkins' Material Misstatements Were Reckless or Intentional

The evidence at trial showed that Mrs. Perkins' misrepresentation regarding whether she and Mr. Perkins were trading in the same securities as World Tree clients was more than negligent.   At a minimum, it was reckless, and most likely intentional.   As noted above, Mrs. Perkins conceded that if she had enforced the prohibition of her and Mr. Perkins participating in block trades with clients, it would have been nearly impossible for Mr. Perkins to cherry pick—at least in their own interest.   In other words, enforcing this policy would have severely inhibited Mr. Perkins' motive to cherry pick.   Mrs. Perkins' motive on the other hand was not to enforce the policy, since she was directly profiting from the cherry-picked trades that went into her and her husband's accounts.

Yet perhaps the best evidence of her scienter is not her failure to enforce that particular provision, but her failure to enforce any of the *other* policies that were designed to prevent cherry picking at World Tree.   In addition to the prohibition in the Form ADV regarding "Access Persons," Mrs. Perkins admitted that she did not require Mr. Perkins to document allocations for block trades in advance.   The firm's compliance manual expressly required that any planned allocation other than a pro rata one be documented on a trade order memorandum *prior* to the trade being placed.   (Pl. Ex. 14 at WTF-0000472.)   But there were no such documents at World Tree. Mrs. Perkins also admitted at trial that if Mr. Perkins had followed the required policy of documenting trade allocations on a trade order memorandum prior to placing block trades, cherry picking would have been impossible.   But she did not require him to comply with the policy.   This

7

was a second important policy designed to combat cherry picking, and another policy that Mrs. Perkins completely failed to enforce.

Mrs. Perkins also admitted that she did not require Mr. Perkins to keep copies of his purported stock allocator spreadsheet, which she supposedly viewed as an alternative to a trade order memorandum documenting planned allocations of block trades.   The SEC does not believe that any such document existed (at least not in the form described by Mr. Perkins) prior to Grant Moore raising concerns about block trade allocations.   If it did exist, however, it was Mrs. Perkins' job to ensure that it was retained.   And no matter what its form—a trade order memorandum, a stock allocator spreadsheet, or something as simple as an email—surely she could have made sure *something* documented how trades would be allocated in advance and kept those documents.   After all, the compliance manual required *all* documents related to the allocation of block trades to be retained by World Tree, but Mrs. Perkins neglected to make sure that happened.   (Pl. Ex. 14 at WTF-0000474.)

Mrs. Perkins' effort at trial to shift responsibility from herself to Market Counsel, World Tree's compliance consultant, further show her own consciousness of guilt.[2]   It was also just another belated attempt to avoid the consequences of her actions.   If Mrs. Perkins had simply been confused about what the rules meant, she could have said so and sought guidance from Market Counsel.   But if she in fact did so, the Defendants presented no unbiased evidence at trial—no emails or other correspondence on the subject, no formal memoranda or written guidance, and no

---

[2] Mrs. Perkins' attempt to justify her feigned ignorance of the meaning of the block trading prohibitions by testifying she relied on Market Counsel is both factually and legally insufficient.   To invoke what is effectively the "advice of counsel" defense, Mrs. Perkins must have proven that she, *inter alia*, sought and received advice that her conduct was legal. *E.g., Markowski v. SEC*, 34 F.3d 99, 104–05 (2d Cir. 1994); *SEC v. Goldsworthy*, Civil Action No. 06–10012–JGD, 2008 WL 8901272, at *4 (D. Mass. June 11, 2008); *SEC v. Caserta*, 75 F. Supp. 2d 79, 95 (E.D.N.Y. 1999).   As Mr. Perkins testified, World Tree did not start block trading until at least 2011—well after Market Counsel prepared the Form ADV and Compliance Manual in 2009.   The Defendants did not offer any evidence that they asked Market Counsel to render an opinion on whether their block trading was permissible under the relevant portions of the Form ADV *before they engaged in that practice*.

witnesses from Market Counsel.   The only evidence of Market Counsel's supposed blessing of Mrs. Perkins' wholesale dereliction of her duties is her own testimony and that of her husband.   But neither of them raised any such defense in this case prior to trial, and neither made any such claim when first questioned under oath by the SEC.   The Court should reject Mrs. Perkins' attempt to shift the blame to Market Counsel for her own refusal to enforce the perfectly clear provisions in World Tree's Forms ADV and compliance manual.

Finally, Mrs. Perkins took no steps to verify whether or not Mr. Perkins was cherry picking. All she did was to double-check that Schwab had made the allocations in the manner that Mr. Perkins intended.   She admitted at trial, as she did during her sworn testimony to the SEC, that she was ultimately responsible for ensuring that the firm allocated block trades fairly and equitably. But she did not review the allocations in any way or analyze them to determine if the LeBlancs were being singled out for large losing trades.   Even a cursory review of the trading data should have raised red flags—why were the LeBlancs doing so poorly compared to everyone else?   But she took absolutely no steps to further that duty because she believed that Mr. Perkins was "an ethical person."   It is not the job of a chief compliance officer to trust, but to verify.

In short, this was not a case of Mrs. Perkins being confused about one provision in World Tree's Form ADV, but rather a wholesale failure of her to act like a professional chief compliance officer.   She simply did not care that the rules were being broken repeatedly by her husband, and the result was that Mr. and Mrs. LeBlanc lost over $3.3 million while the two of them profited by over $347 thousand.

Regardless of the reasons the Court ultimately ascribes for her failures—her trust in and love of Mr. Perkins, the fact that she was profiting from the violations, or simple reckless indifference to compliance—Mrs. Perkins has demonstrated that she cannot be trusted to serve as a chief compliance officer in the future.   The rules are designed to protect clients who trust investment

advisers to manage their personal wealth and savings.   If Mrs. Perkins had enforced those rules, there would have been no cherry picking, and Mr. and Mrs. LeBlanc would have been protected from Mr. Perkins' fraudulent scheme.   Absent an injunction from this Court, Mrs. Perkins will be free to set up a new investment advisory firm and to subject other clients to the risks caused by her flagrant disregard for the rules.   The Court should find that her material misrepresentations in the Forms ADV were made with the requisite mental state and enjoin her from any future violations of the securities laws, as well as imposing a civil penalty against her.[3]

## III.    CONCLUSION

Mrs. Perkins was a trusted professional, but the evidence at trial showed that she repeatedly failed to enforce rules designed to prevent the exact fraud perpetrated by Mr. Perkins.   The evidence introduced at trial shows that her material misrepresentations were likely intentional or reckless, but at a bare minimum, they were negligent.


November 13, 2020                          Respectfully submitted,

                                          /s/ Joshua A. Mayes
                                          Joshua A. Mayes (Ga. Bar # 143107)
                                          950 East Paces Ferry Rd.
                                          Suite 900
                                          Atlanta, GA 30326
                                          404-842-5747
                                          mayesj@sec.gov

---

[3] The same evidence that establishes Mrs. Perkins' requisite intent for her violation of Section 10(b) of the Exchange Act and Rule 10b-5(b) thereunder also establishes the requisite intent for aiding and abetting World Tree Financial and Mr. Perkins' violation of Sections 206(1) and 206(2) of the Advisers Act.   "For aiding-and-abetting liability: the SEC must show (1) that the primary party committed a securities violation; (2) that the aider and abettor had "general awareness" of its role in the violation; and (3) that the aider and abettor knowingly or recklessly rendered "substantial assistance" in furtherance of it. … Although the SEC may satisfy the second and third elements by showing conscious intent; the SEC is only required to show recklessness."   *SEC v. Blackburn*, 156 F. Supp. 3d 778, 794–95 (E.D. La. 2015) (emphasis added and internal citations omitted) (*citing Abbott v. Equity Group, Inc.*, 2F.3d 613, 621 (5th Cir. 1993) and 15 U.S.C. § 78t(e)) .   As described above, Mrs. Perkins conduct was, at a minimum, reckless, and likely knowing: she knew that the enforcement of the block trading prohibition would have made cherry picking impossible, she failed to enforce other policies designed to prevent cherry picking and to take steps to verify Mr. Perkins was not cherry picking, and she did not require Mr. Perkins to keep copies of his alleged stock allocator spreadsheet.

Lynn M. Dean (Cal. Bar. 205562)
Securities and Exchange Commission
444 S. Flower St., 9th floor
Los Angeles, CA 90071
Telephone:     (323) 965-3998
Facsimile:     (213) 443-1904
Email:         deanl@sec.gov


/s/ Karen J. King
KAREN J. KING (#23508)
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone:   (337) 262-6618
Facsimile:   (337) 262-6693
Email:       karen.king@usdoj.gov